MERCY JOHNSON v. HOUSTON & TEXAS CENTRAL RAILROAD
COMPANY.

Decided March 5, 1903.

1.—Proximate Cause—Negligence—Injury to Railroad Switchman—Car Coupling.

Where a switchman was killed by falling from the top of a moving coal car just after an attempt to uncouple it from the train, and the only negligence shown was that the coupling apparatus did not work perfectly, but there was no evidence that its failure to work caused the jerk, or that the switchman fell as the result of a jerk, it can not be held that the failure of the coupling to work was the proximate cause of the accident.

2.—Practice on Appeal—Errors Not Material.

Where the evidence is such that no other judgment could properly have been rendered in the case, this renders unnecessary the consideration of errors in the submission of the cause.

Error from the District Court of Harris. Tried below before Hon. William H. Wilson.

*O. T. Holt* and *John M. Cobb,* for plaintiff in error.

*E. W. Townes* and *Andrews & Ball,* for defendant in error.

GARRETT, CHIEF JUSTICE.—This action was brought by the plaintiff in error against the defendant in error for the recovery of damages for injuries resulting in the death of her husband, Charley Johnson, and alleged to have been caused by the negligence of the defendant while the deceased was in its employment as a switchman. The plaintiff sued also in behalf of her infant child, Pearl Johnson, and of Chloe Thomas and Martin Johnson, the mother and father of the deceased. This is the second appeal. The first will be found reported in 27 Texas Civ. App., 420, 66 S. W. Rep., 72. The cause was submitted to a jury with the charge of the court, and the trial resulted in a verdict and judgment in favor of the defendant. The plaintiff seeks to reverse the judgment of the court below for errors assigned upon the charge of the court and in the exclusion of evidence offered by the plaintiff at the trial.

The deceased was in the employment of the defendant as a switchman in its yard at Houston, and at the time he received the injuries which resulted in his death he was engaged with a crew in switching cars. The crew brought out from the machine shops a train of thirteen coal cars and five box cars on the main line, and the foreman of the crew gave directions about the switching of them onto different tracks. The deceased was told to look out for the hind end of the train. At the time of the accident the cars were being pushed by the engine, which fronted in the direction it was moving, for the purpose of kicking the thirteen coal cars up the main line, and letting one of the others go in on one track and the rest onto another. The train was running at the rate of four or five miles an hour. Deceased was somewhere ahead, near the end of the train on one of the coal cars. One of the switchmen stepped in and moved the

lever on one of the coal cars to separate them, and shoved it over in a slot, gave the slow signal to the engineer, and ran to the second coal car and got on the side of it. The cars did not uncouple, and the foreman then raised the lever and they separated. The signal was for the stopping of the five box cars and the engine. About this time Johnson fell over backwards from the coal car on which he was, and was run over and killed. It appears from the evidence that the switchman who hung up the lever to uncouple the coal from the box cars did it before the deceased got on the train, and that afterwards, when it appeared that the cars did not separate, Crawford, the foreman, made the uncoupling. The switchman said he saw the deceased fall, but could not tell whether it was before Crawford raised the lever or not. There were sideboards to the coal cars, but there was some evidence that Johnson was walking on the coal. Only two witnesses saw him at the time he fell, but neither of them testified as to what car he was on or his position on the car. Williams, the switchman who undertook to uncouple the cars, testified:

"I did not see Johnson until my attention was called to him by the crossing switchman; the crossing switchman on the Silver street crossing hallooed to me that Charlie was hallooing, and at the time I looked up and I saw him throw both hands up and fall right back, and when I noticed him again the cars pulled back, and as he stretched out it seemed to me that two or three pairs of trucks passed over his feet, and I got up and set a brake and stopped the cars; he was dead when we got to him."

The cars were in motion at the time the deceased fell, and he was in the act of falling at the time Williams saw him. He fell at right angles to the track, with his head from it. The other witness was Alex Wilson, a yard watchman, referred to by Williams as the crossing switchman. He testified:

"I was standing at the crossing there with my flag in my hand, and he went along the cars, on the coal cars, walking, and passed the crossing by me, and I noticed the cars as they were rolling, and I kept looking the way the cars were going, and Charley was on those cars as they were moving down. After that I heard Charley halloo, 'Oh,' and he put his hands up, and then he was going over backwards from the car. He had his back turned and he fell backwards from the car with his hands up that way. He was on the same side of the train that I was on, and he probably might have been 100 feet away from me at that time."

It was shown that the couplings on coal cars that were in the train when the accident occurred were in good condition, but it did not appear that more than six or seven of the cars were examined. It was shown, however, that it was a common occurrence for couplings not to work the first time a lever was thrown, that this might be the result of the chain being too long. The engineer testified that he got only an ordinary stop signal, and that his engine came to a standstill with one application of the service stop; that after he stopped the flagman came out with a red flag and he applied the emergency so that there would be no possible way for the engine to move. Both of the witnesses who saw the deceased when

he fell testified that the train was moving at the time. Williams testified that: "The cars did not stop suddenly, but it slackened the speed when the cars failed to come loose; it gave him (Crawford) the slack, and the cars never stopped rolling at all; they separated and rolled right on." There was expert evidence that the effect of a sudden checking the speed of the engine would be to cause a jerk in taking the slack out of the cars; that if the speed was slackened gradually it would gradually take out the slack. No witness testified to any unusual jerk or jar of the train, and those who testified on the subject stated that the slack was gradual and that application of air to the engine reduced the speed and had the effect to slow the train down; that there was no unusual jerking or jolting.

The appellee submits as independent propositions why the judgment of the court below should be affirmed, althougth there may have been error in the charge of the court submitting the case to the jury and in the exclusion of the testimony as shown by the bill of exception, that (1) the plaintiff wholly failed to make out her charge of negligence against the defendant; and (2) it did not appear from the evidence, if there was any negligence on the part of the defendant, that it was the proximate cause of the death of plaintiff's husband. If either of these propositions is true, the judgment should be affirmed, regardless of the errors complained of, because the defendant would have been entitled to a peremptory instruction for a verdict in its favor.

As to the first proposition, there was some evidence of negligence in failing to furnish a sufficient coupling apparatus from the fact that the coupling did not work when the switchman Williams first pulled the lever to separate the cars, and that though this was a common thing it generally happened because the chain was too long, and we are inclined to hold that this would be sufficient evidence to require the issue of negligence to be submitted to the jury. But there is no such relation between the failure of the coupling to work and the fall of the deceased from the car as would show that the former was the proximate cause of the latter. The cars were rolling on without jerking when the deceased fell. It was not shown that he fell as the result of a jerk, or that the failure of the coupling to work caused any jerk. He was seen to throw up his hands and fall from the car to the side at right angles to the track, and not to the front, as he would have fallen if the fall had been caused by a jerk the result of the sudden stopping of the engine before the cars had been uncoupled. There is no testimony that this was done, and there was no evidence to show that the fall was the result of the cars failing to uncouple when Williams first pulled the lever. There was no stopping of the engine until after the signal from Crawford, the foreman.

As we are of the opinion that the injuries were not shown to have been the proximate result of the failure of the coupling to work, it will be unnecessary to consider plaintiff's assignments of error, for no other judgment should have been rendered under the evidence in the case. The judgment of the court below will be affirmed.

*Affirmed.*